## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **ROBERT KEITH MILLER**<br>2761 Scott Street<br>Victoria, B.C. V8R 4J3<br>Canada<br><br>– Individually and on Behalf of All Others<br>Similarly Situated –<br><br>**Plaintiff,**<br><br>v.<br><br>**REKOR SYSTEMS, INC. f/k/a<br>NOVUME SOLUTIONS, INC.**<br>7172 Columbia Gateway Drive, Suite 400<br>Columbia, MD 21046<br>(Howard County)<br><br>**ROBERT A. BERMAN**<br>7172 Columbia Gateway Drive, Suite 400<br>Columbia, MD 21046<br>(Howard County)<br><br>**EYAL HEN**<br>7172 Columbia Gateway Drive, Suite 400<br>Columbia, MD 21046<br>(Howard County)<br><br>**RIAZ LATIFULLAH**<br>7172 Columbia Gateway Drive, Suite 400<br>Columbia, MD 21046<br>(Howard County)<br><br>**Defendants.** | **Case No.**<br><br>**CLASS ACTION<br>COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

i

Plaintiff Robert Keith Miller ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Rekor Systems, Inc. f/k/a Novume Solutions, Inc. ("Rekor" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Rekor securities between April 12, 2019 and May 25, 2021, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Rekor, through its subsidiaries, provides vehicle identification and management systems based on artificial intelligence in the U.S., Canada, and internationally.  Rekor was formerly known as "Novume Solutions, Inc." and traded under the ticker symbol "NVMM" before changing its name to "Rekor Systems, Inc." and its ticker symbol to "REKR" on April 30, 2019.

3.     One of the main drivers of Rekor's business is its automatic license plate recognition ("ALPR") technology, which the Company has pitched to investors as a major market opportunity since at least 2018.  For example, Rekor has consistently touted the purportedly lucrative prospects of its uninsured vehicle enforcement diversion ("UVED") partnership with the State of Oklahoma ("Oklahoma"), under which the Company receives compensation and commission fees in exchange for using its technology to scan vehicle license plates and compare them against a database to identify vehicles without auto-insurance.  Fueled by management commentary, Rekor's stock price has ballooned under the market perception that the Oklahoma UVED partnership is not only lucrative, but the first stepping-stone to capturing similar deals with other municipalities.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rekor's ALPR technology and UVED-related business is outclassed by global competitors with an established, dominant market share; (ii) it was unlikely that states would pass legislation authorizing deals similar to Rekor's Oklahoma UVED partnership because of, *inter alia*, state and local privacy laws and related public concerns; (iii) Rekor's UVED partnership was not as profitable as Defendants had led investors to believe because of known impediments to enrollment rates and costs associated with the partnership; (iv) accordingly, Rekor had overstated its potential revenues, profitability, and overall ALPR- and UVED-related business prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On May 10, 2021, a bill authorizing the establishment of a state UVED program was excluded from the Texas Legislature's Daily House Calendar and left pending in a state

committee.  Because May 10, 2021 was the deadline for the Texas UVED bill to move from the committee, news sources reported significant market speculation that the bill was dead.  Further, on a post-market earnings call that same day to discuss Rekor's first quarter 2021 financial results, Defendant Berman also indicated that Rekor may not secure a UVED agreement with Texas.

6.      On news of the Texas UVED bill's exclusion from the Texas Legislature's Daily House Calendar, Rekor's stock price fell $5.20 per share, or 27.5%, to close at $13.71 per share on May 10, 2021.  Then, following Defendants' post-market conference call with investors the same day, Rekor's stock price fell an additional $2.45 per share, or 17.87%, to close at $11.26 per share on May 11, 2021—representing a two-day total decline of $7.65 per share, or 40.45%.

7.      Then, on May 26, 2021, private investor Western Edge published a report addressing Rekor, entitled "Rekor Systems: Lackluster Growth Runway And Exaggerated Insurance Scheme Raise Substantial Downside Risk."  The Western Edge report alleged, among other things, that global competition was "miles ahead" of Rekor in ALPR development and market establishment; that the Company's "realized results suggest management's potential revenue guidance could be overstated by up to 80%"; and that investors were at risk of facing a "massive downside if [the Company's] growth doesn't show up."  The Western Edge report also noted that Rekor's predecessor in the Oklahoma UVED partnership had exited it because "the program is not economically feasible" given costs associated with the program and because "there was typically no consequences for individuals that simply ignored the fines/insurance requirements after they were identified."

8.      Also on May 26, 2021, Mariner Research Group ("Mariner") published a report addressing Rekor, entitled "REKR – Government documents do not support investor expectations."  The Mariner report "highlight[ed] government documentation which shows that

REKR's revenue opportunities are likely a fraction of what investors expect[.]"  Among other things, Mariner alleged that "Oklahoma government budgets imply that REKR's much vaunted UVED program is a sub $2MM revenue opportunity—almost 96% less than the >$40MM in revenue intimated by Rekor's CEO."  The Mariner report likewise echoed the issues disclosed in the Western Edge report, including, *inter alia*, those that had caused Rekor's predecessor in the Oklahoma UVED partnership to exit the program.

9.       Following publication of the Western Edge and Mariner reports, Rekor's stock price fell $0.44 per share, or 3.93%, to close at $10.77 per share on May 26, 2021.

10.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Rekor is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

14.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired Rekor securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Rekor is a Delaware corporation with principal executive offices located at 7172 Columbia Gateway Drive, Suite 400, Columbia, Maryland 21046.  The Company's common stock traded in an efficient market on the Nasdaq Stock Market and the Nasdaq Capital Market (collectively, the "NASDAQ") under the ticker symbols "REKR" and "NVMM", respectively, throughout the Class Period.

17.     Defendant Robert A. Berman ("Berman") has served as Rekor's President and Chief Executive Officer at all relevant times.

18.     Defendant Eyal Hen ("Hen") has served as Rekor's Chief Financial Officer since May 2019.

19.     Defendant Riaz Latifullah ("Latifullah") served as Rekor's Executive Vice President ("EVP") of Corporate Development from before the start of the Class Period until March 2021.  Latifullah currently serves as the Company's EVP of Strategic Program Development.

20.     Defendants Berman, Hen, and Latifullah are sometimes referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Rekor's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Rekor's SEC filings and press releases alleged herein to

be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Rekor, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Rekor and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     Rekor, through its subsidiaries, provides vehicle identification and management systems based on artificial intelligence in the U.S., Canada, and internationally.  Rekor was formerly known as "Novume Solutions, Inc." and traded under the ticker symbol "NVMM" before changing its name to "Rekor Systems, Inc." and its ticker symbol to "REKR" on April 30, 2019.

24.     One of the main drivers of Rekor's business is its ALPR technology, which the Company has pitched to investors as a major market opportunity since at least 2018.  For example, Rekor has consistently touted the purportedly lucrative prospects of its UVED partnership with Oklahoma, under which the Company uses its ALPR technology to scan vehicle license plates and compare them against a database to identify vehicles without auto-insurance.  Such drivers captured by the UVED program are fined.  Rekor then receives $43.50 of the fine and a 25% commission fee on the offender's newly enrolled auto-insurance if enrolled in the UVED program.  Fueled by management commentary, Rekor's stock price has ballooned under the market

6

perception that the Oklahoma UVED partnership is not only lucrative, but the first stepping-stone to capturing similar deals with other municipalities.

**Materially False and Misleading Statements Issued During the Class Period**

25.     The Class Period begins on April 12, 2019, the day after Rekor filed an annual report on Form 10-K with the SEC, post-market, reporting the Company's financial and operating results for the quarter and year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K touted the Company's newly acquired ALPR technology and its purported competitive strengths, stating, *inter ali*a, that "in March 2019 we acquired substantially all of the assets of OpenALPR Technology, Inc."; that "this technology and ownership of the rights to the technology allows us to protect what we believe are significant competitive advantages for this new line of products"; and that because of "the advantages [Defendants] see in the accuracy and speed of this technology, as well as its ability to be used with many widely available camera systems," they "also believe that this technology can be used more broadly in the global vehicle recognition system market and serve other large markets in the transportation, security and logistics areas."

26.     The 2018 10-K also acknowledged Rekor's larger market competitors, while simultaneously downplaying their impact on Rekor's ALPR business, in part because of Rekor's purportedly superior ALPR technology.  In this regard, the 2018 10-K stated, in relevant part:

> There are several large operators currently engaged in providing these products and services, including [*inter alia*] . . . Vigilant Solutions (now a division of Motorola Solutions) . . . . There are also a number of competitors developing and marketing artificial intelligence-based ALPR systems . . . . The software developed by OpenALPR uses specialized neural network algorithms and takes advantage of over five years of machine learning using images from across the globe. Comparisons made by both OpenALPR personnel and independent evaluators indicate OpenALPR has high levels of accuracy for recognition of license plate numbers and issuing jurisdiction. In addition, the software can identify the make, model and color of the car and provides accurate readings from the images produced by lower-cost security cameras, which avoids the need to use specialized camera equipment. ***As a result, we believe that our products and services in this market currently can***

7

*offer significant advantages in accuracy, usability and price that provide us with*
*a competitive edge.*

(Emphasis added).

27.    Additionally, the 2018 10-K touted Rekor's purported growth strategies for its
ALPR business, including, *inter alia*, that Rekor's "current emphasis for growth" would rely on
the "exploit[ation of] the competitive advantages of [its] license plate reading technology,"
particularly by, among other things, "licens[ing its] technology to . . . large government . . .
customers for use with new and existing security, logistics, traffic management, vehicle location
and customer loyalty systems."  The 2018 10-K also represented that Defendants "intend to use
the contacts, capabilities and resources of our legacy professional services businesses as we seek
to expand our market" to "pursu[e] larger government and enterprise clients[.]"

28.    Appended as exhibits to the 2018 10-K were signed certifications pursuant to the
Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Berman and Latifullah certified that
the 2018 10-K "fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange
Act], as amended, and that information contained in [the 2018 10-K] fairly presents, in all material
respects, the financial condition and results of operations of the Company."

29.    On March 30, 2020, Rekor filed an annual report on Form 10-K with the SEC,
reporting the Company's financial and operating results for the quarter and year ended December
31, 2019 (the "2019 10-K").  The 2019 10-K touted that the Company's ALPR technology could
disrupt the current ALPR market, stating, *inter alia*, that "[a] key capability of our AI-based
software is its ability to provide precision vehicle identification results with dramatically less
expensive hardware," which "can change the economics and dynamics of an existing market."

30.    The 2019 10-K also continued to downplay Rekor's larger competitors, stating,
*inter alia*, that "we are well positioned to serve th[e ALPR] market and can currently provide

operators of existing security systems significant advantages . . . that provide us with a competitive edge," and that Defendants "believe there is no competitor that provides a similarly accurate and cost effective suite of products and services."

31.     With respect to opportunities for growth in the ALPR space, the 2019 10-K represented, *inter alia*, that "[w]e believe there are significant opportunities within [video surveillance, video management software and ALPR] markets which could lead to the expansion [of] our business"; that "[g]rowth in vehicle recognition is being driven by multiple government and law enforcement applications as well as a broad range of new applications"; that "market trends create significant opportunities for us to expand our market presence while developing relationships with both new customers and expending relationship with existing customers"; and that "[o]ur current emphasis on growth is to concentrate available resources on expanding sales of products and services that exploit the competitive advantages of our technology," particularly "to license our technology to [*inter alia*] . . . large government . . . customers."

32.     Appended as exhibits to the 2019 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Berman and Hen.

33.     On November 9, 2020, Rekor issued a press release announcing the Company's Oklahoma UVED partnership (the "November 2020 Press Release").  That press release quoted Defendant Berman, who represented, in relevant part, that "Oklahoma has hundreds of thousands of uninsured motorists on the road right now" and "[w]e are seeing eye-popping statistics in other states regarding an increase in uninsured motor vehicles on the road (as well as expired tags)"; that Rekor "provides all the technology [states] need . . . to identify uninsured vehicles and take effective measures to ensure compliance"; that "[t]he Oklahoma UVED Program is among the first

in the country"; and that with Rekor's "cost-effective and multidimensional technology, we anticipate that many states will initiate similar programs in the near future."

34.     The November 2020 Press Release also touted Rekor's measures, and Oklahoma's legal incentives, to help ensure that drivers caught by the UVED program would enroll in auto-insurance as part of the program following a citation, stating, in relevant part, that "[a] motorist enters the UVED Program by acquiring insurance and paying a $174 enrollment fee, thereby avoiding the possibility of criminal charges, associated penalties, and a permanent mark on his or her driving record"; that "Rekor will also assist Oklahoma drivers by providing a one-stop web portal for uninsured motorists to easily find non-standard and standard insurance for their vehicle"; that, "once identified, the enforcement division will issue a 'Notice to Respond,' encouraging a vehicle owner to get insurance and comply with the law"; and that "[u]ninsured motorists cited on the road by police officers can face stiff penalties, including fines, imprisonment, license plate confiscation and/or reinstatement fees."

35.     On January 19, 2021, Defendant Berman presented at Noble Capital Markets' Seventeenth Annual Small and Microcap Investor Conference, dubbed "NobleCon17."  During that presentation, Defendant Berman represented that Rekor could secure $100 for each successful enrollment in the Oklahoma UVED program, as well as reduce the rate of uninsured drivers in the state to 10% out of potentially 500,000 drivers, thereby generating significant revenue for the Company.  Specifically, during that presentation,  Defendant Berman stated, in relevant part:

> So, assuming that it's just Oklahoma and it doesn't expand beyond Oklahoma, Oklahoma has several hundred thousand uninsured motor vehicles on the road, and our goal, as that of Oklahoma's, is to reduce that to a steady state of 10%. So, if you were to take a number of 500 thousand, in three years we want to get that 500 thousand down to a steady state of 50 thousand, so we want to get the other 450 thousand vehicles compliant. So, the - Rekor receives $43.50 every time we get somebody through the diversion program by sending the notice out and getting them insured, and then we share in 25% of the insurance commission off the

premium . . . . [T]he average premium would be a $1,000 to $1,200 and the average commissions are like 20%, so Rekor would get 25% of that on a recurring basis. So, you know, maybe you could, you know, maybe a little bit more than double the $43.50 and, you know, closer to $100 per, you know, successful diversion. So, you can - you can do the math on that. And then, folks can look around. There's plenty of public information on - if you just Google the number of uninsured motor vehicles in the top 10 states, you'll see that, you know, if you go across the country, it's in the tens and tens of millions. And we believe that as program rolls out, our goal would be the same in every state to reduce it down to a steady state of 10%, and the program would operate pretty much the same way. So, that kind of gives you a road map for the revenue.

36.     On March 12, 2021, Rekor filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K"). The 2020 10-K touted the Company's Oklahoma UVED partnership, stating, *inter alia*, that "Oklahoma's UVED Program uses our vehicle recognition technology to leverage existing state resources to ensure that all drivers have at least the minimum required amount of liability insurance," and that, "[w]ith the successful implementation of Oklahoma's UVED Program, we have now established a leading position in the implementation of an innovative program now under active consideration by a number of other states."

37.     The 2020 10-K also made additional positive statements regarding how Rekor's Oklahoma UVED partnership would purportedly lead to additional state UVED partnerships, including, among other things, that Defendants "anticipate Oklahoma's program . . . will inspire additional states to follow Oklahoma's model to develop similar programs"; that, "[i]n Oklahoma and other states, opportunities exist to use" Rekor's ALPR technology for additional applications; that "[w]e will look to leverage our success with our Oklahoma UVED program to other state governments"; and that, "[c]urrently, Florida, Tennessee, New York and Texas have introduced legislation to authorize UVED, and other states may do the same as the program can be a significant source of new revenue for cash strapped state budgets."

11

38.     Additionally, the 2020 10-K contained substantively the same statements as referenced in ¶¶ 29-31, *supra*, representing that Rekor's ALPR technology could disrupt the current ALPR market; continuing to downplay Rekor's larger competitors; and regarding the Company's opportunities for growth in the ALPR space.

39.     Appended as exhibits to the 2020 10-K were substantively the same SOX certifications as referenced in ¶ 28, *supra*, signed by Defendants Berman and Hen.

40.     The statements referenced in ¶¶ 25-39 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rekor's ALPR technology and UVED-related business is outclassed by global competitors with an established, dominant market share; (ii) it was unlikely that states would pass legislation authorizing deals similar to Rekor's Oklahoma UVED partnership because of, *inter alia*, state and local privacy laws and related public concerns; (iii) Rekor's UVED partnership was not as profitable as Defendants had led investors to believe because of known impediments to enrollment rates and costs associated with the partnership; (iv) accordingly, Rekor had overstated its potential revenues, profitability, and overall ALPR- and UVED-related business prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

41.     On May 10, 2021, a bill authorizing the establishment of a state UVED program was excluded from the Texas Legislature's Daily House Calendar and left pending in a state committee.   Because May 10, 2021 was the deadline for the Texas UVED bill to move from the committee, news sources reported significant market speculation that the bill was dead.   Further,

on a post-market earnings call that same day to discuss Rekor's first quarter 2021 financial results, Defendant Berman also indicated that Rekor may not secure a UVED agreement with Texas, stating, in relevant part:

> So look, we have a whole bunch of enthusiastic and supportive shareholders and you know everybody is trying to figure out what these legislators are doing and what the states are doing, but it's just going to move forward the way it moves forward and sometimes it takes a turn and a twist, but I still believe we'll get there with the state this year, and maybe even more than one, so we'll see. I mean, the year is far from over.

42.     On news of the Texas UVED bill's exclusion from the state's Daily House Calendar, Rekor's stock price fell $5.20 per share, or 27.5%, to close at $13.71 per share on May 10, 2021.  Then, following Defendants' post-market conference call with investors the same day, Rekor's stock price fell an additional $2.45 per share, or 17.87%, to close at $11.26 per share on May 11, 2021—representing a two-day total decline of $7.65 per share, or 40.45%.  Despite this decline in the Company's stock price, Rekor securities continued to trade at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misrepresentations or omissions with respect to Rekor's ALPR business prospects.

43.     The statements by Defendant Berman in ¶ 41 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Rekor's ALPR technology and UVED-related business is outclassed by global competitors with an established, dominant market share; (ii) it was unlikely that states would pass legislation authorizing deals similar to Rekor's Oklahoma UVED partnership because of, *inter alia*, state and local privacy laws and related public concerns; (iii) Rekor's UVED partnership was not as profitable as Defendants had led investors to believe because of known impediments to enrollment

rates and costs associated with the partnership; (iv) accordingly, Rekor had overstated its potential revenues, profitability, and overall ALPR- and UVED-related business prospects; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

44.     On May 26, 2021, private investor Western Edge published a report addressing Rekor, entitled "Rekor Systems: Lackluster Growth Runway And Exaggerated Insurance Scheme Raise Substantial Downside Risk."  The Western Edge report alleged, among other things, that global competition was "miles ahead" of Rekor in ALPR development and market establishment; that "realized results suggest management's potential revenue guidance could be overstated by up to 80%"; and that investors were at risk of facing a "massive downside if [the Company's] growth doesn't show up."

45.     Specifically, regarding Rekor's inferior ALPR development and market establishment as compared to global competition, the Western Edge report noted, *inter alia*, that "Rekor entered the ALPR business in March 2019 with the acquisition of OpenALPR," which was originally an open-source ALPR platform, "meaning that anyone who wanted to use it could download it for free"; that "[m]ost major municipalities and government entities across the [U.S.] have for years already been working with large ALPR providers that have sophisticated and tailored product offerings"; and that "Rekor has relatively minimal competitive advantages in the industries that they want to compete in and even less of an existing establishment."  To provide a specific example, the Western Edge report cited a database created by the Electronic Frontier Foundation that catalogs police technology contracts across the U.S., which "has logged 877 ALPR contracts," of which, "Rekor is involved in 34 of the contracts, with 27 of the 34 being associated with various Oklahoma counties and the UVED auto-insurance program."  The Western

Edge report noted that "[t]his leaves Rekor with only seven reported contracts outside of Oklahoma" as compared to "Motorola's Vigilant Solutions which has a network of +300 reported contracts across 23 states."

46.     The Western Edge report also found that the revenue prospects for Rekor's Oklahoma UVED partnership were significantly overstated.  For example, although "Rekor's UVED . . . partnership with the state of Oklahoma has been the single largest contributor to the meteoric rise in the [C]ompany's share price over the past six months," in fact, "Sweden based Sensys Gatso had the original two year contract under similar arrangements and walked away from the deal in 2020 because 'the program is not economically feasible[.]'"  Specifically, according to the Western Edge report, "[t]he main problem cited by Sensys was that there was typically no consequences for individuals that simply ignored the fines/insurance requirements after they were identified, 'making the overall payment rate for the program well below what is standard[.]'"  This was allegedly "confirmed by questions that were asked by potential suppliers to Oklahoma as part of the renewal RFP [request for proposals]," which Western Edge cited in its report.  Additionally, "only 36% of individuals receiving notices actually enrolled in an auto-insurance policy," as exemplified by Sensys who "issued a paltry 90.3k notices over two years, and only ended up getting ~23k enrollments into an insurance program."  Western Edge found it "shocking that Rekor's CEO would first lay out . . . ambitious projections given his knowledge of the programs life to date results, and second, to then extrapolate it to the top 10 most populous states," as he did during the January 19, 2021 NobleCon17 presentation.

47.     Apart from revenues, the Western Edge report also noted that "Sensys walked away because the revenue receipts fell far short of the fixed and variable costs that Sensys had to shoulder as part of running the program" and that "Rekor will be hard pressed to simply break

even on the Oklahoma auto-insurance initiative, much less turn this into something that justifies the company's meteoric share price rise."

48.    Moreover, the Western Edge report pointed out that municipalities were unlikely to adopt legislation allowing Rekor's ALPR-related services because of state and local privacy laws and related public concerns, as well as general antipathy towards targeting lower-income communities that cannot afford auto-insurance.  The Western Edge report also observed that "people generally don't avoid buying auto-insurance because they're lazy and negligent" but rather "because they're poor and can't afford it."  The Western Edge report cited several municipalities that had recently aborted legislation to allow services like Rekor's despite being touted as promising new avenues for new UVED partnerships by Defendants.  For example, "Florida in particular has been touted as one of the next candidates for a UVED program," but "Florida's legislative bill for ALPR UVED recently *died* on April 30th in the subcommittee" (emphasis in original); "Texas has also been hyped up as one of the other big states contemplating a UVED program," however, "on April 15th, the House Bill for the establishment of the program was 'left pending in committee[,]'"which Western Edge alleged "is legislative parlance for saying that the bill is dead"; and, "[s]imilarly, Tennessee deferred their UVED bill to 'Summer Study' on April 21st."

49.    Also on May 26, 2021, Mariner published a report addressing Rekor, entitled "REKR – Government documents do not support investor expectations."  The Mariner report largely comported with, and supplemented, the Western Edge report, finding that "Oklahoma government budgets imply that [Rekor]'s much vaunted UVED program is a sub $2MM revenue opportunity – almost 96% less than the >$40MM in revenue intimated by Rekor's CEO"; that "[t]he predecessor provider of [ALPR] technology to Oklahoma ended its relationship with the

state saying the program was 'not economically feasible' at a per enrollment fee nearly double what [Rekor] receives"; that "[g]overnment filings showing 'Rekor's largest state and local clients' and [Mariner's] searches of other contracts imply annual revenues of just $1.8MM, a far cry from sellside expectations that contemplate $26MM in revenue in 2021 and $53MM in 2022"; that, "[i]n Texas, Rekor appears to have missed its window as the ALPR bill is unlikely to make it to the legislative floor before the May 31 session adjournment" and, "[a]s Texas legislature meets every other year, it won't see the light of day until at least 2023"; that "[e]vidence . . . suggest[s] that adoption of similar legislation in other states is unlikely due to privacy concerns"; and that Rekor's "largest contributor to 2020 revenue will fall 95% in 2021 due to its non-recurring nature."

50.     As with the Western Edge report, the Mariner report also took issue with Defendant Berman's statements during the January 19, 2021 NobleCon17 presentation, noting that "he appears to suggest there are 500,000 uninsured motorists in Oklahoma, with a target to have just 10% of those remain uninsured, implying 450,000 enrollments at close to $100 a pop, for a total three-year revenue opportunity of $45MM, or $15MM annually over the three year life of the contract."  However, "according to a September 2020 Amendment of Solicitation for the UVED Program," cited by Mariner in its report, "'Oklahoma Insurance Department data indicates at least 200,000 uninsured vehicles exist in Oklahoma', a far cry (and 60% difference) from Berman's 500,000[.]"  The Mariner report further noted that, "[a]t year end 2020, the Oklahoma Executive Budget shows 20,678 total enrolled citizens in the [UVED] program, with an expectation of just under 16,000 more enrollments through 2023"; that "Berman's 450k enrollments out of 500k uninsured drivers implies an enrollment rate of 90%," whereas the "actual enrollment rate for the first six months of 2020 was just 36%"; and that "[w]hat this results in is a dramatically lower revenue opportunity tha[n] what Berman intimated during the investor presentation[.]"

51.     Following publication of the Western Edge and Mariner reports, Rekor's stock price fell $0.44 per share, or 3.93%, to close at $10.77 per share on May 26, 2021.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Rekor securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Rekor securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Rekor or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Rekor;

- whether the Individual Defendants caused Rekor to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Rekor securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

59.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Rekor securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Rekor securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Rekor securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Rekor securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

65. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Rekor securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Rekor's finances and business prospects.

66. By virtue of their positions at Rekor, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

67.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Rekor, the Individual Defendants had knowledge of the details of Rekor's internal affairs.

68.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Rekor.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Rekor's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Rekor securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Rekor's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Rekor securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

69. During the Class Period, Rekor securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Rekor securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Rekor securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Rekor securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

70. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## <u>COUNT II</u>

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

72. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     During the Class Period, the Individual Defendants participated in the operation and management of Rekor, and conducted and participated, directly and indirectly, in the conduct of Rekor's business affairs.  Because of their senior positions, they knew the adverse non-public information about Rekor's misstatement of income and expenses and false financial statements.

74.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Rekor's financial condition and results of operations, and to correct promptly any public statements issued by Rekor which had become materially false or misleading.

75.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Rekor disseminated in the marketplace during the Class Period concerning Rekor's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Rekor to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Rekor within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Rekor securities.

76.     Each of the Individual Defendants, therefore, acted as a controlling person of Rekor.  By reason of their senior management positions and/or being directors of Rekor, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Rekor to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Rekor and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

77.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Rekor.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  June 29, 2021

Respectfully submitted,

/s/ Daniel S. Sommers

Steven J. Toll (Md. Bar No. 15824)
Daniel S. Sommers (Md. Bar No. 15822)
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &**
**     TOLL PLLC**
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email:  stoll@cohenmilstein.com
           dsommers@cohenmilstein.com
           dbunch@cohenmilstein.com

*Liaison Counsel for Plaintiff*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
           ahood@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, **Robert Keith Miller**, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Rekor Systems, Inc. ("Rekor" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Rekor securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Rekor securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in Rekor securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.

Executed _____June 13, 2021_____
           **(Date)**


_____(signature)_____
**(Signature)**

_____ROBERT K. MILLER_____
**(Type or Print Name)**

**Rekor Systems, Inc (REKR)**                                    **Miller, Robert Keith**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 2/23/2021 | 10 | $16.5000 |
| Purchase | 5/7/2021 | 10 | $19.4190 |
| Purchase | 5/10/2021 | 30 | $13.7280 |